413 So.2d 276 (1982)
Albert R. POWELL, Plaintiff-Appellant,
v.
FLOTATION SERVICES, INC., Defendant-Appellee.
No. 8656.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
Writ Denied June 4, 1982.
*277 J. Wayne Landry, New Iberia, for plaintiff-appellant.
Jack J. Cousin, New Iberia, for defendant-appellee.
Before GUIDRY, CUTRER and STOKER, JJ.
CUTRER, Judge.
Albert Powell (Powell) brought suit against Flotation Services, Inc. (Flotation) seeking past due wages, penalties and attorney's fees under the provisions of LSA-R.S. 23:631 and 632.[1] The trial court rendered judgment in favor of Powell in the amount of $370.18 as past due wages and attorney's fees in the amount of $750.00. Statutory penalties were denied by the trial court which recognized the equitable defenses raised by Flotation. Powell appealed seeking penalties. Flotation answered the appeal contending that Powell is entitled to no recovery. We amend and affirm.
The facts of this case are as follows:
Powell was employed by Flotation as a boat captain on October 16, 1979. He was assigned to Flotation's towboat, the "Sassy Queen," for a fourteen-day-on and seven-day-off shift at a rate of $100.00 per day. Two captains were assigned to the towboat at all times. Each captain worked six hours on and six hours off during the operation. As Powell began his service, he was working aboard the boat with Captain Paul Babineaux.[2] *278 The "Sassy Queen" was delivering a loaded barge to Houston, Texas.
In the early morning of October 23, 1979, a scheduled crew change was to take place near Boliver, Texas. Babineaux was to be replaced by Mr. Al Fuselier and then the "Sassy Queen" would continue its voyage to Houston. In order to facilitate the change, the barge was tied to a pile cluster owned by Houston Oil & Mineral Docks. The towboat was separated from the barge. The towboat then went to the other side of the ship channel and took on Fuselier. During the crew change, Babineaux was on duty (as it was after 6:00 A.M.) and Powell was down below asleep.
Later, Powell heard two dock workers from Houston Oil & Mineral Docks tell Fuselier that the "Sassy Queen" had damaged the pile cluster. Upon the reunion of the barge and towboat, Powell noticed the pile cluster to be leaning and slack was taken out of the ropes securing the barge. No report was made to Flotation by any captain concerning this incident at that time.
Powell and Fuselier then continued north from Boliver to Houston. Babineaux went to his home near New Iberia. Upon reaching Houston on Friday morning, October 26, 1979, Powell quit his job and left the "Sassy Queen." Fuselier called Flotation via the radio informing them of Powell's departure. As no captain can work more than twelve hours per day and the barge had to be unloaded with Fuselier as the pumpman, a substitute captain had to be obtained so that the "Sassy Queen" would not remain idle. Flotation was able to reach Babineaux and have him driven from New Iberia, Louisiana to Houston as Powell's replacement.
The following morning Powell went to Flotation's office in New Iberia to collect his pay for ten days work. He was given a check for eight days work (less undisputed deductions) in the amount of $615.69. He was told that the remaining two days pay would be forthcoming at the end of the next payroll, some two weeks hence. Powell returned to his home in Vidor, Texas, where he cashed his check.
In the interim, Flotation stopped payment on the check they had issued to Powell. Flotation reissued a check in the amount of $359.69 which reflected a $250.00 deduction as the cost of transporting Babineaux to Houston. Powell accepted the check. In early November 1979, Flotation was informed by telephone of the alleged accident concerning damage to the pile cluster owned by Houston Oil & Mineral Docks. The alleged claim was for $7,800.00. Flotation then decided to get statements from all captains concerned with the incident. Fuselier and Babineaux complied with Flotation's request and gave statements. Powell told Flotation personnel he had no personal knowledge of an accident, as he was asleep, and refused to give a statement. Flotation then refused to tender the check for Powell's last two days wages of $120.18 ($200.00 less Federal taxes and $60.00 medical exam, as Powell had not remained in Flotation's employ for longer than 30 days as required by his employment contract), until such a statement was given.
Powell then filed this suit to recover the money withheld by Flotation for transport services in replacing him, the amount of the last check due, penalties and attorney's fees.
The substantial issue on appeal is whether penalties should be awarded to Powell.
The facts and circumstances of this case are such that, for clarity, we must divide the penalty inquiry into two parts. We shall first treat the question of whether the withholding of the transportation costs for Powell's replacement after he quit his job, would serve as an equitable defense to a claim for penalties.
We shall then review the question of whether the withholding of Powell's wages for the remaining two days, on the ground *279 that Powell refused to give a statement regarding the alleged accident, would serve as an equitable defense to Powell's claim for penalties.

WITHHOLDING TRANSPORTATION COSTS AS AN EQUITABLE DEFENSE
LSA-R.S. 23:632 is a penal statute and therefore must be strictly construed. Equitable defenses are available and penalty wages are not to be absolutely imposed irrespective of circumstances. Doucet v. Plantation Manor, Inc., 382 So.2d 984 (La. App. 1st Cir. 1980). In order for an employer to be liable for penalty wages, the employer must have been motivated by bad faith or must be found to have acted in an arbitrary or unreasonable manner. It is only a "good faith non-arbitrary defense to liability for unpaid wages; i.e., a reasonable basis for resisting liability" which will permit the courts to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978); Letulle v. S & E Oil Co., Inc., 387 So.2d 703 (La.App. 3rd Cir. 1980).
With these principles before us, we examine the facts to determine if Flotation was in good faith or had a reasonable basis for withholding the transportation costs from the check issued to Powell.
The facts show that it was necessary that a replacement for Powell be made immediately after Powell quit his job and departed the boat. At the time of Powell's departure the boat was moored at the dock in Houston unloading cargo. It took approximately eight hours to unload. The boat was scheduled to leave the Houston dock immediately for another destination. Without an immediate replacement for Powell, the boat would have had to remain at the dock. The boat could not leave without being staffed with a captain. This delay would jeopardize the charter of the boat as well as cost Flotation $900.00 per day for "down time."
Powell's sudden departure without prior notice was the cause of Flotation's transportation expenses to replace Powell with another captain. Flotation's deduction for these transportation expenses from Powell's check was based upon reasonable grounds. Flotation reasonably believed that it was justified in withholding this sum from Powell's wages. This constitutes an equitable defense and a penalty will not be awarded on this ground. Powell is entitled, however, to recover the transportation costs that were withheld since Flotation filed no reconventional demand nor any affirmative defense which would serve as a basis for denying Powell recovery of these expenses.
POWELL'S REFUSAL TO GIVE AN ACCOUNT STATEMENT AS AN EQUITABLE DEFENSE FOR WITHHOLDING THE REMAINING TWO DAYS OF POWELL'S WAGES
When Powell made demand for his ten days of wages, he was told that only eight days would be paid at that time. The remaining two days would be paid at the next pay schedule, two weeks hence. It was admitted that the full wages could have been made on the day of demand, but it was more convenient to pay the two days on the succeeding pay schedule, the regular procedure of Flotation in payment of wages.
The statute in question requires that the employer pay to an employee, who is discharged or resigns, "the amount then due under the terms of the employment ... not later than three days following the date of discharge or resignation." The employer's rules, policies or procedures for issuing checks for wages shall not have the effect of extending the three day pay period set forth for employees who have been discharged or resigned. Duhon v. Prof Erny's Music Company, Inc., 328 So.2d 788 (La.App. 3rd Cir. 1976). Under these principles Flotation was arbitrary in deferring for two weeks the payment of the remaining two days wages.
In early November, near the scheduled pay period, Flotation received a telephone call from Houston Oil & Mineral Docks contending that a piling cluster at their dock had been damaged when the barges were tied there while making the *280 crew change on October 25th. Flotation then set out to get statements from the three captains, Powell, Babineaux and Fuselier, as to whether the "Sassy Queen" or its barge may have caused the damage. Powell refused to give such a statement. He contended that he was below deck asleep at the time of the crew change and had no personal knowledge of any such damage. The remaining captains each gave statements. These statements, however, are not in the record.
Flotation issued orders to its bookkeeper that Powell's remaining wages were to be withheld until Powell did give such a statement. The officer of Flotation testified that Flotation wanted the statement regardless of whether Powell had any personal knowledge of the accident. Powell's refusal to give a statement continued and the remaining wages were not paid up to the time of trial, June 15, 1981.
The question then arises as to whether Flotation can obviate further penalties on the basis that Powell refused to give such a statement.
A very similar fact question was presented to this court in the case of Duhon v. Prof Erny's Music Company, supra. In that case, plaintiff brought suit for wages, penalties and attorney's fees.
After terminating her employment, plaintiff went to defendant's office demanding her wages. The office manager tendered to her a check for her net wages ($84.79) and requested plaintiff to complete and sign a "Removal from Payroll" form. Plaintiff refused to execute the form and payment of wages was withheld.
The "Removal from Payroll" form was furnished to employers by a governmental agency for the apparent purpose of facilitating the adjustment of rights between employee and employer at employment termination and to establish for unemployment benefit purposes, the reason for the termination.
In reaching a conclusion that defendant was not justified in withholding payment until the form was executed, this court stated that no law was cited to show that the employee must execute the form or that the employer must insist that the employee execute it. The court further stated as follows:

"Although we understand defendant's desire to have the form completed and/or signed and think that perhaps plaintiff may have been somewhat uncooperative in her attitude, we do not think defendant was justified in its position. No case has been cited to us as precise authority for the situation herein. Analogous jurisprudence is contained in the cases of Young v. White Stores, 269 So.2d 266 (La.App. 3rd Cir., 1972) and Hendricks v. Air Lines, Inc., 234 So.2d 93 (La.App. 4th Cir. 1970). These cases held that company rules or policies as to procedures for issuing checks do not outrank or invalidate state law, that is, the continuing-wage penalty statute. Since the form was not required by law, we see little difference between the facts of those cases and the instant one. Accordingly, we conclude that defendant was not justified in withholding payment until the form was signed and/or completed." 328 So.2d 788, 790.
In the case at hand the president of Flotation testified that Flotation's liability insurance coverage contained a $5,000.00 deductible clause. He stated that it was the company practice to get accident statements from boat personnel in order to evaluate Flotation's possible liability along with any liability of its insurer.
It is not contended by Flotation that there is any law which would require the execution of such accident statements. The purpose of the statements was to facilitate Flotation and its insurer in assessing their potential liability for accident damage. This accident report requirement is only a company policy, rule or procedure and, as such, the refusal of an employee to comply with it is not justification for withholding wages that are due. Flotation was not justified in making payment of wages conditioned upon the employee complying with a company policy, rule or procedure. Letulle v. S & E Oil Co., supra.
Although we understand Flotation's desire to have the statement executed by *281 Powell and that Powell was uncooperative in his attitude, these elements do not elevate an unjustified withholding of wage payments to a justified one. Flotation is subject to the payment of the full 90 days penalties. These wages had not been paid at the time of trial, more than 1½ years after demand. The trial court judgment will be amended accordingly.
We note that LSA-R.S. 23:632 requires that any attorney's fees assessed shall be taxed as costs. The trial court judgment erroneously awarded $750.00 attorney's fees to Powell instead of taxing them as costs of court. We will amend the trial court judgment to comply with LSA-R.S. 23:632.
For the reasons set forth, the trial court judgment is hereby amended by adding penalties of $100.00 per day for ninety (90) days. Also, the trial court judgment is amended to reflect that the $750.00 attorney's fees shall be taxed as costs of court. In all other respects the trial court judgment is affirmed. Costs of this appeal are to be paid by Flotation Services, Inc.
AMENDED AND AFFIRMED.
NOTES
[1] LSA-R.S. 23:631 provides, in part:

"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation...."
LSA-R.S. 23:632 provides:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney's fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation." (Emphasis added.)
[2] Paul Babineaux was erroneously referred to as "Mr. Trahan" by Powell during his testimony at trial.