960 So.2d 1246 (2007)
Jeffrey B. SMITH, et al., Plaintiffs-Appellees,
v.
CITY OF RUSTON, Defendant-Appellant.
No. 42,281-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1247 Hubley, Marcotte, Rhodes & Hussey by Lydia M. Rhodes, Shreveport, Dawkins & Carter by William S. Carter, Jr., Ruston, for Appellant.
Broussard, Bolton, Halcomb & Vizzier by Daniel E. Broussard, Jr., Alexandria, for Appellees.
Before CARAWAY, MOORE and LOLLEY, JJ.
CARAWAY, J.
In this suit filed by 35 former and current firefighters against the City of Ruston and its Mayor (collectively herein the "City"), plaintiffs sought a determination of the level of base pay upon which salary differentials were to be calculated under La. R.S. 33:1992, an award for unpaid vacation benefits and out of class dispatcher pay for employees who performed dispatcher duties. Plaintiffs also sought a mandatory injunction for future compliance by Ruston with the statutes at issue. The former firefighters added a claim for penalties and attorney fees pursuant to La. R.S. 23:631 for the failure to pay wages upon termination of employment. In the bifurcated liability portion of trial, the court ruled favorably for the firefighters on the issues of the calculation of base pay and unpaid vacation but rejected the claim for out of class dispatcher salary. The court awarded the former employees attorney fees for the denial of vacation pay and denied penalties. Both the firefighters and Ruston have appealed. Finding no error in the trial court's rulings, we affirm.

Facts and Procedural History
On February 15, 2001, current and former Ruston firefighters instituted this suit for damages against the City grounded in three different wage and vacation disputes. After bifurcating the trial, the trial court heard evidence of the firemen's work schedules and the City's pay policies and made initial declaratory judgments regarding the operation of Louisiana statutory law.
In the suit, plaintiffs sought unpaid vacation benefits. The evidence presented at trial showed that effective in September of 2000, the City changed its vacation policy retroactive to August 31, 1999, after consideration of the holding of Kenner Firefighters Assoc. v. City of Kenner, 96-186 (La.App. 5th Cir.8/31/99), 742 So.2d *1248 989, writ denied, 99-2697 (La.11/24/99), 750 So.2d 993. The case addressed the meaning of a vacation day for firefighters who worked 24-hour shifts as a calendar day rather than an eight-hour work day. Pursuant to La. R.S. 33:1996, firemen are entitled to receive eighteen annual vacation days after one year of service.
The evidence showed that Ruston firemen work 24-hour shifts from seven in the morning until seven the following morning. The firemen work one shift and are off for a forty-eight hour period. Prior to Kenner, supra, it was the City's policy to require firemen to take three eight-hour vacation days for one unworked 24-hour shift or six vacation day-shifts per year. After the Kenner pronouncement, the City changed its vacation policy to require firemen to take only two calendar days of vacation for one 24-hour shift of vacation or nine days of vacation per year. In the suit, both the current and former firemen argued that Kenner should be applied retroactively and that they should be entitled to back vacation pay prior to the date of the Kenner decision.[1]
The next claim made by plaintiffs concerned the City's calculation of differential pay levels for higher ranking firemen as set forth in La. R.S. 33:1992. La. R.S. 33:1992 provides minimum salaries for higher ranking employees of varying percentages above the base pay of a fireman. The firefighters argued that the City utilized the wrong base pay for the entry level fireman to calculate the higher ranking firemen's salaries. The evidence showed that at the time of suit, the City's base pay for firemen was $4.53 per hour.[2] Because the federal minimum wage was $5.15, the City supplemented the base pay with "education" or "EMT" pay of $150.00 per month. Every beginning fireman received the EMT pay whether or not he or she was certified as an EMT. In the determination of the higher ranking salaries of engineers, captains and district chiefs, the City utilized $4.53 as the base pay amount and did not include the EMT pay for a base of $5.15 in calculating the higher ranking employee salaries.
Finally, the firemen claimed entitlement to dispatcher pay (25% above that of a fireman) during the times that they performed dispatcher duties. The evidence showed that the position of dispatcher or fire alarm operator was once filled by one individual working Monday through Friday, 8:00 a.m. to 5:00 p.m. Officers on duty performed dispatcher work on other shifts. The fireman dispatcher retired in 1993. Both before and after 1993, the dispatcher-related work was not filled by employees functioning solely as dispatchers. Rather, all employees on duty were expected to periodically perform dispatcher work which consisted in part of taking and routing calls. At trial, the firemen who testified stated that they worked in this position approximately once or twice a month and did not generally work in the position for the entire 24-hour shift.
For violations of state statutes relating to these wage issues, the plaintiffs sought declaratory judgment and damages. The firemen also sought an injunction ordering the City to comply with the statutory provisions at issue. The former employees also sought penalties and attorney fees under La. R.S. 23:631 and 632 for the failure to pay both vacation pay and wages.
*1249 The parties jointly sought bifurcation of the trials for declaratory judgment/injunctive relief and damages which was granted by the trial court. This appeal concerns the trial on the demands for declaratory judgment and injunctive relief. After hearing the evidence, the trial court applied the Kenner pronouncement retroactively and awarded all plaintiffs either credit or a monetary award for back vacation pay, retroactive to February 15, 1998, or three years from the date of filing suit. For their successful vacation claim, the court awarded the former firefighters attorney fees but rejected their claim for penalties and damages. The court also concluded that the EMT pay should be included in the calculation of the base pay of the entry level fireman and reserved the determination of the actual amounts of differential pay for higher ranking employees for the trial on damages. The court rejected the plaintiffs' claim for dispatcher pay and omitted any direct ruling on the injunction.
The plaintiffs sought a partial new trial on the issues of injunction and dispatcher pay. The City also sought a new trial, arguing that the judgment for liability was incomplete due to the trial court's failure to determine what portion of each firefighter's pay was to be included in the differential calculation. When both motions for new trials were denied, the City appealed the judgment. The firefighters answered the appeal.

Discussion
The parties' agreement to bifurcate the trial suggests that the judgment before us is a partial final judgment under La. C.C.P. art. 1915(A)(5) disposing of "the issue of liability."[3] Another trial remains concerning "damages" in this case, which will involve an accounting of the alleged underpayment of wage benefits. On the "liability" side, the trial court effectively made three separate declaratory judgments from the statutory law. The rulings set the ground rules for the accounting phase of the trial for delinquent wage and vacation benefits and, in one instance, denied altogether the firemen's claims for extra dispatcher pay. In summary, the trial court decided the following issues:
(i) The base salary paid to the entry level firefighter for the application of the salary differential schedule mandated by La. R.S. 33:1992(A) (hereinafter the "Base Pay Ruling");
(ii) The calculation for annual vacation pay required by La. R.S. 33:1996 (hereinafter the "Vacation Pay Ruling"); and
(iii) The necessity for payment of dispatcher wages under La. R.S. 33:1992(A)(9) for the department members' part-time work in fulfilling the duties of a dispatcher (hereinafter the "Dispatcher Pay Ruling").

I.
Although indirectly related to the trial court's Base Pay Ruling, the City's initial assignment of error does not question that ruling which determined that the salary of the entry level fireman should be based upon $5.15 per hour and that the City miscalculated such salary. Instead, the City argues that even with a base pay of $5.15 per hour, the plaintiffs as higher ranking firemen and employees are still receiving salaries in accordance with the statutory salary differential schedule.
*1250 La. R.S. 33:1992 ("Section 1992") provides for the salary differential schedule as follows:
A. The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, including salaries payable out of the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule, and such salaries shall be paid semi-monthly not later than the fifth and twentieth day of each calendar month:
(1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.
(2) Engineers shall receive a minimum monthly salary of not less than ten percent above that of a fireman.
(3) Lieutenants shall receive a minimum monthly salary of not less than fifteen percent above that of a fireman.
(4) Captains shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(5) Battalion chiefs and district chiefs shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(6) Assistant chiefs and deputy chiefs shall receive a minimum monthly salary of not less than fifty percent above that of a fireman.
(7) A mechanic or assistant mechanic, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(8) A superintendent of fire alarm system, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(9) A fire alarm operator or dispatcher, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(10) A fire inspector shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
* * * * *
The City's first assignment of error insists that the plaintiffs failed to prove in the "liability" phase of the proceedings any violation of their entitlement to the statutory differential pay under Section 1992 A. The City claims that when the salary of each senior ranking fireman or employee is properly determined, those salaries meet or exceed the statutory schedule amounts set forth in the proportions above the $5.15 base pay determined by the trial court. While making this argument, the City's brief shows that there are issues raised in the jurisprudence regarding the consideration of longevity pay, state supplemental pay and other sources of income for the computation of the salaries of senior ranking firemen. With the trial court's Base Pay Ruling addressing only the entry level fireman's pay, the other side of the equation went unaddressed and unproven by the plaintiffs.
There is merit in the City's argument that both the base pay salary of the beginning fireman and the senior ranking fireman's salary must be determined amidst statutory controversy over the calculation of those salary levels. The trial court's partial judgment focused only on the benchmark salary of the Ruston entry level fireman. The actual salaries of each of the senior level firemen or employees *1251 claiming differential pay in this case may be viewed as a matter for the final accounting which will occur for each affected plaintiff at the second phase of the trial. Indeed, this was obviously the trial court's view as it rejected the City's arguments on the motion for new trial to consider the components of the various salary levels for each of the plaintiffs seeking additional differential pay. A question therefore for the second phase of this litigation may involve disputed components of the senior ranking firemen's income that comprise their salaries for purposes of employing the salary differential schedule of Section 1992 A. The failure to address that question in the initial partial judgment, however, was not trial court error. The issue was not sufficiently raised or waived by either side in the "liability phase" of this litigation, and the City's arguments regarding that issue may be made upon determination of the facts concerning plaintiffs' salaries during the trial for the accounting.

II.
The City's next assignments of error challenge the trial court's Vacation Pay Ruling. The City argues that its policy for vacation benefits was based upon a reasonable interpretation of the statutes prior to the 1999 ruling in Kenner, supra. Regardless of its decision in 2000 to raise the vacation benefit allowance retroactive to the time of the Kenner ruling, the City insists that there was no prior deficiency in its payment of vacation benefits and nothing is owed to plaintiffs for additional vacation pay between February 1998 (the prescription date) and the fall of 1999 (the publication of Kenner).
The provisions of La. R.S. 33:1996 ("Section 1996") address vacation time for firemen as follows:
Firemen in municipalities, parishes and fire protection districts to which this Subpart applies, after having served one year, shall be entitled to an annual vacation of eighteen days with full pay. This vacation period shall be increased one day for each year of service over ten years, up to a maximum vacation period of thirty days, all of which shall be with full pay. The vacation privileges herein provided for shall not be forfeited by any member of the department for any cause. Firemen employed on January 6, 1969 shall have their present longevity considered as a factor in the computation of their vacation benefits as provided herein.
The provisions of this section shall in no way be construed to affect in any manner any presently existing system of computing vacation periods under which greater vacation benefits are granted than those provided for herein and the same shall continue in full force and effect.
In Kenner, supra, the court reviewed the work schedule for the Kenner firemen which is similar to the three-day work cycle utilized in Ruston. The firemen work a full 24-hour shift and then have 48 hours off the job. The Kenner firemen, after working six scheduled 24-hour shifts under this three-day rotation, were then given five consecutive days off when the full cycle started again. This meant a fireman worked approximately ten 24-hour shifts per month. Likewise, the testimony in this case indicates that Ruston firemen work approximately ten such shifts each month.[4] The issue presented *1252 in Kenner and in the similar work setting of this case is: What is the meaning of the "eighteen days with full pay" vacation allowance in Section 1996 within the 24-hour shift system employed by Ruston and other municipal fire departments?
The ruling in Kenner interpreted the statute's meaning for "eighteen days" based upon the specific number of days during which a Kenner fireman worked each 24-hour shift. Since the Kenner fireman began his 24-hour shift at 7:00 a.m., his shift actually spanned two days, from the morning of the day he arrived until the morning of the next day. The court reasoned that under this shift schedule, when the Kenner fireman took vacation leave of one 24-hour shift, it should be considered as use of two "days" from the eighteen-day statutory allotment. Therefore, the ruling in Kenner granted the firemen the allowance of nine shifts each year to be taken as their statutory 18-day vacation under Section 1996.
The problem with the rationale employed in Kenner is that the "eighteen days" of statutory vacation under Section 1996 can vary statewide depending upon the length of a department's work shift and the particular time each day when a work shift begins. For example, if the Kenner department made its shift change at midnight each day, then under the court's rationale, its firemen would be entitled to eighteen 24-hour shifts (or 432 hours) of paid annual vacation instead of the nine 24-hour shifts (216 hours) awarded.
Rejecting the Kenner ruling as the mandated meaning of the 18-day vacation of Section 1996, the City argues that each of the eighteen days of statutory vacation should be understood as equivalent to the generally understood 8-hour work day. Therefore, the City's pre-2000 policy of allowing six 24-hour shifts (144 hours) to be taken as vacation is the equivalent of eighteen 8-hour work days of vacation or 144 hours of paid vacation.
Providing for statutory construction, Civil Code Article 13 states that "[l]aws on the same subject matter must be interpreted in reference to each other." In 1942, at the time of enactment of the "eighteen days with full pay" vacation rule of Section 1996, two statutes pertaining to the organization of municipal fire departments already existed which serve to shed some light on the workday of firemen. The statutes, La. R.S. 33:1962 and 1963, remain in our law and provide as follows:
Section 1962. The fire department shall be divided into two forces or platoons, one to perform day service and the other to perform night service. The proper authority may transfer a member of the department from one platoon to another for the good of the service.
Section 1963. The forces shall alternate. On the day of the shift of forces the day force shall be on duty twenty-four hours. This Section does not apply to the City of New Orleans.
From our reading of these statutes in pari materia with Section 1996, and from our understanding of the unique shift work of firefighters on call, we reject the City's view that the average 8-hour work day of the general public is the proper standard for interpretation of the 18-day vacation grant of Section 1996. Those "eighteen days with full pay" should be considered in the context of the 12-hour daily work shifts for firemen envisioned by Sections 1962 and 1963. Therefore, eighteen 12-hour work shifts or nine 24-hour work shifts for a total of 216 hours represent the *1253 vacation allowance mandated by Section 1996. The result reached in the Kenner case was correct under the statutory construction we now apply. Prior to the issue having arisen in Kenner, these statutes were the longstanding law of this state.[5] Accordingly, the trial court's Vacation Pay Ruling requiring the retroactive payment of nine 24-hour shifts or 216 hours for the statutory "eighteen days" of paid vacation is affirmed. Upon remand, the City shall account to the plaintiffs for such vacation pay from February 1998 to August 31, 1999.

III.
In answer to the appeal, the plaintiff firemen challenge the trial court's Dispatcher Pay Ruling, the denial of injunctive relief and the denial of penalties.
The evidence shows that there is no full-time dispatcher position in the Ruston Department. Personnel of different rank filled the duties of dispatchers through part-time service. Based upon Section 1991(A)(9), supra, those plaintiffs receiving the base pay of firemen or additional differential pay are claiming compensation at the rate of 125% of base pay for their part-time dispatcher duties.
In reaching the Dispatcher Pay Ruling, the trial court considered the Title 33 statutory provisions and jurisprudence concluding that the statutory law does not require "that a department have a dispatcher who is assigned only to that duty." We agree. In particular, the differential pay schedule of Section 1992 is expressed in terms of "monthly salary," suggesting regular compensation paid monthly for the overall duties of the particular rank of fireman. Section 1992 does not mandate that the part-time fulfillment of duties included for higher ranking positions requires the alteration of the salary level of the personnel temporarily performing that work. The trial court's Dispatcher Pay Ruling is affirmed.
We also reject the firefighters' argument that the trial court erred in failing to grant an injunction for future compliance by Ruston with the statutes at issue. Plaintiffs have failed to demonstrate that the City will not follow the final court pronouncement on these issues. Further, as the City will be bound by that ruling in a money judgment, its enforcement is assured.
Regarding the plaintiffs' claim for penalties for unpaid wages, La. R.S. 23:631 and 632, if the amount owed to the employee is subject to a bona fide dispute, the court will not consider the failure to pay as arbitrary and will refuse to award penalties. Blaney v. Hulsey, Harwood & Hulsey, 27,983 (La.App.2d Cir.2/28/96), 669 So.2d 661. To say the least, the statutory interpretive issues involved in this matter are complicated and allow for various good faith readings of the provisions involved. Accordingly, we find that a bona fide dispute exists and that the trial *1254 court appropriately denied recovery of penalties to the firemen.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of $239.00 are assessed equally between the parties, in accordance with La. R.S. 13:5112.
AFFIRMED.
NOTES
[1] The plaintiffs concede that because of the prescription applicable to unpaid wages their claims may only extend retrospectively to February 1998, three years before the filing of this action.
[2] While a new pay plan enacted in 2004 raised the fireman's base pay to $5.15 an hour, the City continues to exclude the $150 in the calculation of upper ranking employees' salaries.
[3] As will be discussed below in answer to the City's first assignment of error, every legal issue presented by the wage and hour statutes may not have been addressed by the trial court's partial judgment. Nevertheless, the partial judgment may be considered by this court under La. C.C.P. art. 1915(B), and any unaddressed legal issue bearing on the City's statutory obligations or "liability" for wages will remain viable on remand.
[4] In oral argument and in brief the parties have alluded to the federal wage and hour laws and regulations. The regulated 40-hour work week, or 170 to 180 monthly hours of the average worker, differs significantly from the 240 hours on the job for the firemen working ten shifts each month. Any issue concerning monthly overtime pay and the federal regulations is not involved in this dispute. The meaning of the "eighteen days" vacation allowance, which would be a generous three-and-one-half-week period for an average eight-hour per day beginning worker, should not necessarily be understood in terms of the average work days of non-firemen.
[5] We reject the City's assertion of laches. As explained in Fishbein v. State ex rel. Louisiana State University Health Sciences Center, 04-2482 (La.4/12/05), 898 So.2d 1260, the doctrine of laches is in conflict with this state's civil laws of prescription. The court repudiated former opinions which suggested that the doctrine may be applicable under certain circumstances. We also reject the City's argument that the award of attorney fees was premature. Pursuant to La. R.S. 22:631 and 632, an award of attorney fees is proper when "a well-founded suit for any unpaid wages whatsoever" is filed. As with other aspects of the trial court's partial ruling, the court made a declaratory judgment that attorney fees will be owed in this case for unpaid wages. Such ruling assumes that unpaid wages will be determined in the accounting phase when the court will fix the attorney fees award as a money judgment.