11 So.3d 1129 (2009)
Russell LEDAY, Vickie Jackson, Gwendolyn F. Giles, Albert Dennis, Jerry Don McMurry, Martha E. Norman, Dr. Angelia Weaver, Ullysses Tucker, Jr., Catherine B. Nicholson, and Peter G. Forest, Plaintiffs-Appellants
v.
STATE of Louisiana and Grambling State University, through the University of Louisiana System, Defendants-Appellees.
No. 44,069-CA.
Court of Appeal of Louisiana, Second Circuit.
April 15, 2009.
Opinion on Rehearing May 7, 2009.
Culpepper & Carroll, PLLC, by Bobby L. Culpepper, Jonesboro, for Appellants.
Wiener, Weiss & Madison, by John M. Madison, Jr., Shreveport, for Appellees.
Before BROWN, WILLIAMS and DREW, JJ.
DREW, J.
Several longtime employees of Grambling State University ("GSU") here appeal *1130 a judgment granting defendants' motion for partial summary judgment and dismissing with prejudice plaintiffs' petition for wrongful termination. The judgment also sustained the defense exception of no cause of action under the "whistle blower" statutes and further dismissed with prejudice plaintiffs' petition asserting a "personal vendetta" against them by the defendants. The judgment is reversed and the matter is remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
In their wrongful termination action, plaintiffs sought to be reinstated to their positions with back pay and attorney's fees plus legal interest. Demanding damages sufficient to compensate them for loss of employment, mental anguish and attorney's fees, plaintiffs named as defendants the State of Louisiana and the Louisiana Board of Supervisors of the University of Louisiana System by and through GSU along with Dr. Horace Judson, President of GSU, and Mr. Billy Owens, Vice President for Finance.
Some of the original plaintiffs have exited the lawsuit,[1] leaving eight active plaintiffs, one of whom was not terminated but was "demoted."
Although the terminations were characterized as post-Hurricane Katrina budget cuts, the following active plaintiffs alleged they were unlawfully terminated (or demoted in the case of Dr. Angela Weaver):
Vickie Jackson Director of Communications and Public AffairsMr. Owens stifled her work performance by having paperwork previously approved by Dr. Judson (Owens' supervisor) disapproved or delayed; Owens was blatantly insubordinate to Dr. Judson and also made the work environment inhospitable to those who questioned his bad fiscal management practices.
Jerry Don McMurry Manager of Mechanical and Plumbing SystemsTerminated when he did not perform (due to lack of funds) renovations totaling approximately $120,000 to the president's residence at the direction of the president's wife, Dr. Gail Shorter-Judson; outside contractors are now performing the work at a greater cost to GSU.
Martha E. Norman Director of Planning and AnalysisDemoted in responsibility, but not pay, to a "mail-carrier" at registrar's office, which did not have duties and responsibilities for an employee of her institutional research background; then terminated.
Dr. Angela Weaver Executive Assistant to President and Assistant Professor of Political Science (removed from administrative duties but continued as a tenured teachernot terminated, but demoted with a reduction in pay).
Ullysses Tucker, Jr. Annual Fund DirectorTerminated.
Catherine B. Nicholson Associate Director of DevelopmentMr. Owens stifled her work performance by having paperwork (previously approved by Dr. Judson, Owens' supervisor) disapproved or delayed; Owens was blatantly insubordinate to Dr. Judson and also made the work environment inhospitable to those who questioned his bad fiscal management practices. Alleged to have been required to perform additional duties without being compensated and being paid less than *1131 President Judson's development employee, Ullysses Tucker.
Peter G. Forest Director of Athletic Media RelationsTerminated.
Mark Hall Strength and Conditioning Football Coach (added as plaintiff in first amending petition)Relieved of duties 8/2/05 for refusing to help cover up NCAA violations; declined request to recant a 8/4/05 letter reporting NCAA violations to the Athletic Director with a copy to President Judson, who by 8/11/05 letter terminated Hall as of 8/31/05.
The plaintiffs attributed some terminations to the direction of Dr. Sally Clausen, the President of the Board of Trustees for Colleges and Universities. Although GSU attempted to justify the layoffs as necessary budget reductions, no reduction to GSU's budget occurred. Plaintiffs contended that some people were replaced with others at an increased pay scale while other positions were given a change in name, such as "Assistant Director" to "Assistant to Director." Some of those dismissed had complained about the actions of Owens, but were entitled to protection under the "whistle blower" statutes. Some were terminated when they refused to follow instructions given by President Judson's wife.
Alleging that they had exhausted their administrative procedures, plaintiffs contended that:
 GSU failed to follow its own administrative requirements and did not provide due process to its employees who asserted that merit raises were given without the required evaluations;
 they had a reasonable expectation of continued employment;
 GSU was in extremely bad faith and arbitrary and capricious in its actions toward them;
 termination letters cited the concurrence of department heads who were never consulted;
 some of the people terminated were replaced almost immediately;
 some dismissals were exacted against those who had complained about financial practices of the university;
 the actions of President Judson and Mr. Owens were a misuse of their offices and amounted to a personal vendetta against the plaintiffs; and
 the plaintiffs relied to their detriment on the GSU Employee Manual and the 1998 Unclassified Personnel Handbook and Policy Statement I.
In their motion for partial summary judgment, defendants stated that all of the plaintiffs were at-will employees, who could be discharged for any reason. In addition, defendants filed a peremptory exception of no cause of action based upon plaintiffs' failure to state a cause of action under the "whistle blower" statutes, i.e., La. R.S. 23:967 and 42:1169, and their failure to state a personal cause of action against Judson and Owens.

REASONS FOR JUDGMENT
After reviewing the affidavits and depositions filed into the record, the trial court found that:
 none of the plaintiffs had a fixed term of employment;
 the grievance procedures found in the employee handbook did not apply to terminations and termination procedures;
 absent a specific contract or agreement setting a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability;

*1132  the reason for termination need not be accurate, fair or reasonable and the termination can be for no reason at all; and therefore
 defendants were entitled to the partial summary judgment.
Likewise, the trial court found that the defense was entitled to the exception of no cause of action in the action under the "whistle blower statutes," because:
 under La. R.S. 42:1169, pertaining to violations of the Code of Governmental Ethics, the employee must report what he reasonably believes is a violation of any provision of the law within the jurisdiction of the board or any order, rule or regulation, or any other alleged acts of impropriety;
 La. R.S. 23:967 protects an employee who reports or refuses to participate in illegal work practices;
 the employer must have violated state law to trigger these protections;
 accepting all of plaintiffs' allegations as true for the purposes of deciding the exception of no cause of action, plaintiffs' petition challenged questionable actions but did not allege violations of state law or the Code of Governmental Ethics;
 the termination of these at-will employees did not violate state law or the Code of Governmental Ethics;
 the allegations of "personal vendetta" was not actionable in the termination of at-will employees; and
 plaintiffs are required to state with specificity how the whistle blower statutes were violated, and these plaintiffs did not do so.
DISCUSSION
Our law on review of summary judgments is well settled.[2]
The defendants supported their motion for summary judgment with the affidavit of Dr. Judson averring that all the plaintiffs were at-will employees and the Unclassified Personnel Handbook (a copy of *1133 which was attached to their motion) was not applicable to terminations, but only to GSU employees' complaints which could affect their attitude and work. The handbook stated at the outset that it was not intended to form a contract and that unclassified administrative employees served at the "pleasure or will of the President and the Board of Trustees." The plaintiffs opposed the motion for summary judgment with multiple references to depositions filed by both parties establishing many complaints by plaintiffs concerning financial practices and questionable actions.
Prior to trial the parties agreed to the following material facts:
1. Paragraph F, p. 19, of the "unclassified Personnel handbook Grambling State University Fall 1998" contained the statement:
All unclassified administrative staff shall hold their administrative appointment at the pleasure or will of the President and the Board of Trustees. The annual approval of the budget and personnel documents designating the salary and other personnel benefits for administrative personnel shall not constitute an implied nor expressed agreement for continued employment throughout the fiscal year but, are executed or approved solely for the purpose of budgeting in associated fiscal and administrative matters.
2. The active plaintiffs were hired in the listed years: Norman (1974), McMurry (1979), Jackson (1982), Nicholson (1973), Forest (2003), and Tucker (2005).
3. All the active plaintiffs, except Angela Weaver, were terminated on the following dates: Jackson (January 4, 2006), McMurry (January 4, 2006), Norman (January 4, 2006), Tucker (December 2005/January 2006), Nicholson (January 6, 2006), Forest (December 13, 2005), and Hall (August 11, 2005).
4. Angela Weaver was relieved of administrative duties and continued as a tenured teacher at GSU.
The defendants argued, and the trial court found, that:
 the plaintiffs were at-will employees with no fixed term of employment;
 where a term of employment is indefinite, the employment is terminable at the will of either the employer or the at-will employee;
 absent a specific contract or agreement establishing a fixed term of employment, an at-will employee is free to quit at any time without liability to the employer and may be terminated by the employer at any time; and
 the reasons for termination need not be accurate, fair or reasonable. In fact, there need be no reason at all for termination. See discussion, Clark v. Acco Systems, Inc., 39,532 (La.App. 2d Cir.4/6/05), 899 So.2d 783.
In Clark, supra, summary judgment in favor of the employer was affirmed by this court based upon Clark's at-will employment. Clark stated he was terminated due to his job performance, while the employer stated Clark was terminated to make room for a salaried supervisor with an employment contract. Clark's status as an at-will employee was undisputed. In the Clark decision, this court found the summary judgment was appropriate because Acco needed to show only that Clark was an at-will employee. Even if the employer gave a false reason for termination, termination for any or no reason was legal. Clark, supra.
This present dispute is factually distinguishable from Clark, supra. These plaintiffs disputed their status as at-will employees. More significantly, the plaintiffs *1134 alleged that the defendants engaged in questionable actions and personal vendettas which resulted in plaintiffs' terminations and demotion, making them eligible for protections under the "whistle blower" statutes. The important distinction to be drawn is that even at-will employees are protected by the "whistle blower" statutes.
La. R.S. 23:967 (Employee protection from reprisal; prohibited practices; remedies) states:
A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.
(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.
D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.
The version of La. 42:116 9(B) (1999 Acts, No. 327, § 1) in effect at the time these plaintiffs were terminated stated:
B. Any public employee who reports to a person or entity of competent authority or jurisdiction information which he reasonably believes is a violation of any law or of any order, rule, or regulation issued in accordance with law or any other alleged acts of impropriety related to the scope and/or duties of public employment or public office within any branch of state government or any political subdivision shall be free from discipline or reprisal for reporting said acts of alleged impropriety. No employee with authority to hire and fire, supervisor, agency head, or other elected official shall subject to reprisal any such public employee because of said employee's efforts to disclose such acts of alleged impropriety.
The trial court gave a very thoughtful, scholarly discussion of the issues presented in this case. However, the trial court erred in dismissing plaintiffs' action with prejudice without providing the plaintiffs an opportunity to amend their pleadings within a reasonable time period to state a *1135 cause of action and to make more specific many of the sometimes vague assertions of wrongdoings in their filings.
La. C.C.P. art. 934 directs that:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed. (Emphasis added.)
Until plaintiffs are given that opportunity to amend their pleadings to specify how the "whistle blower" statutes apply to each of them, we find granting of the partial summary judgment based upon their status as at-will employees to be premature. Whether or not any amendments will result in a different outcome is not the issue. The law directs that each plaintiff should be given the opportunity to amend their pleadings in these situations. If the amendments fail to allege with sufficient specificity the acts that resulted in their termination (or demotion), the defendants will be able to re-urge their motion for summary judgment and any appropriate exceptions.

DECREE
The judgment is reversed and the matter is remanded for further proceedings. The trial court is directed to order the plaintiffs to file their amendments within a delay set by the trial court.
REVERSED AND REMANDED WITH INSTRUCTIONS.

ON REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS and DREW, JJ.
PER CURIAM.
At the request of the defendants, we grant rehearing to clarify our original opinion in one respect only. From our de novo review of the record, we agree with the trial court's finding that all of the plaintiffs were at-will employees of Grambling State University. There are no other changes to our original opinion.
NOTES
[1] Russell LeDayAsst. Dir. of Alumni Affairs (later withdrew as plaintiff); Gwendolyn F. GilesHospitality Specialist (later dismissed at her own request); and Albert Dennis Athletic Director (later withdrew as plaintiff).
[2] In Haley v. Wellington Specialty Ins. Co. 44,014 (La.App. 2d Cir.2/25/09), 4 So.3d 307, this court discussed appellate review of a summary judgment. In deciding if a summary judgment is appropriate, appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is proper. The summary judgment procedure is designed to secure the just, speedy, and efficient determination of every action and shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(2) and (B).

The party seeking the summary judgment has the burden of proof. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, the movant's burden on the motion does not require him to negate all essential elements of the adverse parties' claims, actions, or defenses, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse parties' claims, actions, or defenses. Thereafter, if the adverse parties fail to produce factual support sufficient to establish that they will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. Haley, supra. For purposes of summary judgment, a fact is material if it potentially insures or precludes recovery, affects a party's ultimate success or determines the result of a legal dispute. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App. 2d Cir.8/21/96), 679 So.2d 477.
When a motion for summary judgment is made and supported, the adverse parties may not rest on the mere allegations or denials in pleadings, but must respond with affidavits, depositions, etc., and show specific facts establishing there is a genuine issue for trial. If they do not do so, summary judgment, if appropriate, shall be rendered. LSA-C.C.P. art. 967(B). Haley, supra.