MOORE, J.
| Sterling Associates Inc. and Sterling Pharmacy LLC (“Sterling”[1]) appeal a summary judgment that awarded a former employee, Amy Martin, a penalty wage of $45,000 and attorney fee of $6,500 under the Payment of Employees Law, La. R.S. 23:631-632. Finding genuine issues of material fact, we reverse and remand.

Factual Background

In February 2005, Sterling hired Ms. Martin[2] as a pharmacist in its Ruston store. By 2009 she was normally working four days a week, 10 hours a day, at $50 an hour. She also received paid time off or “flextime” in a specified amount for hours worked.
On March 2, 2009, she gave written notice that she was quitting effective March 6. Her final pay stub, dated March 20, stated that the check was for 38.27 hours’ work, but did not include payment for 70.28 hours’ flextime recorded on the previous pay stub. On April 16, Ms. Martin sent Sterling’s president, CEO and registered agent, Scot Simmons, a written demand for payment, advising that she would take legal action if not paid. Simmons’s office assistant, Brandy Andrews, signed the certified return receipt on April 17, but Sterling sent no payment.
Ms. Martin then retained counsel who sent another letter to Simmons on August 12, 2009, demanding 90 days’ penalty wage and attorney fees under R.S. 23:632. This time, Sterling promptly sent via FedEx a check for |2the unpaid flextime, $3,514.00, together with a check for $500.00 to cover any “associated fees and costs.” A cover letter from Sterling’s attorney firmly stated that they owed nothing more, based on Ms. Martin’s “conduct and manner in departing” her employment. Ms. Martin cashed the wage check but not the fees and costs check.

Procedural History

Ms. Martin filed this suit on September 3, 2009, demanding penalty wages and attorney fees.
By answer, Sterling admitted that when she quit, Ms. Martin had accrued 70.28 hours’ flextime pursuant to company policy. However, it raised the legal defense that she did not comply with the statute in that Simmons himself had not received her demand letter (even though his secretary signed the certified return receipt on April 17). Sterling also raised various equitable defenses to payment: (1) Ms. Martin’s “abrupt departure and insufficient notice” required Sterling to incur additional costs to fill her time slots; (2) she violated her “employment obligations” by removing or improperly using Sterling’s proprietary business information, data, equipment or supplies; (3) she improperly charged Sterling for time she did not work, and had been disciplined for this; (4) she breached her “fiduciary employment duties” by disclosing confidential, proprietary information to Sterling’s competitors; and (5) she violated her professional duty to ensure quality patient care by suddenly leaving an area which is suffering a shortage of pharmacists.
|aMs. Martin filed this motion for summary judgment, arguing that Sterling failed to pay her flextime by the next *414 regular payday or 15 days after her final day of work, as required by R.S. 23:631; thus she was entitled to 90 days’ penalty wage of $45,000 plus attorney fees under R.S. 23:632. In support, she attached her own affidavit, that of her attorney (claiming a fee of $4,400), and copies of her pay stubs and her demand letter to Sterling. She also attached copies of Sterling’s answers to interrogatories, in which Sterling asserted that she stole from the pharmacy.
Sterling then filed its own motion for partial summary judgment, asking to dismiss the penalty wage claim. It attached Simmons’s affidavit stating that when he hired Ms. Martin, she was on five years’ probation from the Louisiana Pharmacy Board for stealing hydrocodone, a controlled narcotic, from a prior employer to give to her husband, but she failed to disclose these facts at the time; also, audits revealed that while she was working for Sterling, “noticeable amounts of hydro-codone went missing,” and he believed she stole from the pharmacy. The affidavit also asserted that Simmons had disciplined her for falsifying her time records (he attached a document labeled “Policy— Written Reprimands/Termination” signed by Ms. Martin on October 3, 2006); as a result, Sterling installed a biometric time clock, after which Ms. Martin’s time decreased six hours a week. Finally, Simmons believed that when Ms. Martin left, she misappropriated sensitive information (price lists, client information, internal accounting procedures, Sterling’s policies and procedures, and prospective client files) and conveyed them to her new employer, toySterling’s detriment.
Ms. Martin opposed Sterling’s motion, arguing that much of Simmons’s affidavit was unsupported speculation, notably his suspicions that she stole narcotics from Sterling and passed its sensitive information to her new employer. In support, she attached the affidavit of her immediate supervisor at Sterling, David Gann, who admitted that even though small amounts of hydrocodone could not be accounted for, nobody ever suspected Ms. Martin of theft. She also argued that the “Policy — Written Reprimands/Termination” was not a disciplinary action but, by its own terms, merely an acknowledgment of Sterling’s discipline policy.
Sterling filed two additional affidavits of Simmons in opposition to Ms. Martin’s motion. These reiterated his earlier assertions but supplied no documentation that Ms. Martin stole any hydrocodone from Sterling, passed confidential information to Sterling’s competitors, or any of his other allegations against her.

Action of the District Court

After a hearing in April 2010, the district court issued a 6y2-page written ruling. Quoting the applicable law of R.S. 23:631-632, the court noted that while penalty wage claims are subject to equitable defenses, Beard v. Summit Inst., 97-1784 (La.3/4/98), 707 So.2d 1233, an employer can avoid the penalty only with a “good-faith, non-arbitrary defense,” Carriere v. Pee Wee’s Equip. Co., 364 So.2d 555 (La.1978). The court then rejected each of Sterling’s defenses:
(1) the conditions of Ms. Martin’s probation were matters of public record and Simmons admitted he was aware of her probation |fistatus when he hired her, so lack of disclosure was not valid.
(2) the affidavit of Gann, the pharmacist in charge, denied that anyone at Sterling ever suspected Ms. Martin of stealing hydrocodone, so Simmons’s assertion that she might have done so was “after-the-fact-speculation.”
(3) the “Policy — Written Reprimands/Termination” document ap *415 peared to be Sterling’s blanket policy, not a reprimand of Ms. Martin; at any rate, Ms. Martin stayed on the job over three years after the alleged reprimand, during which time Sterling never charged her for alleged overcompensation; hence, the claim of time theft was not made in good faith.
(4) Ms. Martin’s at-will status under La. C.C. art. 2747 totally negated any claim that she failed to provide adequate notice of her voluntary termination and was liable for Sterling’s incidental expenses.
(5) Simmons admitted that Sterling’s computer system was incapable of tracking whether Ms. Martin stole any data, and without other proof, the allegation of theft of pricing, client lists and other sensitive information was baseless.
Finding no legal or equitable defense to nonpayment, the court granted Ms. Martin’s motion for summary judgment, awarding her the 90 days’ penalty provided by R.S. 23:632. By later ruling, it fixed attorney fees at $6,500.
Sterling filed a motion for new trial which the court denied without a hearing. Sterling now appeals, raising four assignments of error.

Applicable Law

The Payment of Employees Law, La. R.S. 23:631-653, requires the prompt payment of employees upon discharge. The sections applicable to this case are as follows:
§ 631. Discharge or resignation of employees; payment after termination of employment
A. (l)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the | fiperson employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first. * * *
§ 632. Liability of employer for failure to pay; attorney fees
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
A claimant seeking to recover penalties or attorney fees under R.S. 23:632 must establish (1) that wages were due and owing, (2) that demand for payment was made where the employee was customarily paid, and (3) that the employer did not pay upon demand. Becht v. Morgan Bldg. & Spas Inc., 2002-2047 (La.4/23/03), 843 So.2d 1109; Hattaway v. Health Paradigm LLC, 45,047 (La.App. 2 Cir. 3/3/10), 31 So.3d 1176, writ denied, 2010-0691 (La.5/28/10), 36 So.3d 251. Accrued vacation pay is an “amount then due under the terms of employment” and must be paid in accordance with R.S. 23:631. Beard v. Summit Inst., supra.
*416 When a bona fide dispute exists over the amount of wages due, an employer’s failure to pay is not an arbitrary refusal and no penalties will be awarded. Hattaway v. Health Paradigm, supra; Smith v. City of Ruston, 42,281 (La.App. 2 Cir. 6/20/07), 960 So.2d 1246. Imposition of penalty 17wages requires a finding that the employer’s failure to pay was arbitrary or in bad faith. Blaney v. Hulsey, Harwood & Hulsey, 27,988 (La.App. 2 Cir. 2/28/96), 669 So.2d 661; Jeansonne v. Schmolke, 2009-1467 (La.App. 4 Cir. 5/19/10), 40 So.3d 347.
A man is at liberty to dismiss a hired servant without assigning any reason for so doing; the servant is also free to depart without assigning any cause. La. C.C. art. 2747. This rule is known as “at-will employment.” Quebedeaux v. Dow Chem. Co., 2001-2297 (La.6/21/02), 820 So.2d 542. An at-will employee is free to quit at any time without liability to her employer. LeDay v. State, 44,069 (La.App. 2 Cir. 4/15/09), 11 So.3d 1129; Clark v. Acco Systems Inc., 39,532 (La.App. 2 Cir. 4/6/05), 899 So.2d 783.
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Adams v. JPD Energy Inc., 45,420 (La.App. 2 Cir. 8/11/10), 46 So.3d 751, writ denied, 2010-2052 (La.11/12/10), 49 So.3d 892. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Sensebe v. Canal Indem. Co., 2010-0703 (La.1/28/11), 58 So.3d 441. A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is |sentitled to judgment as a matter of law.” La. C.C.P. art. 966 B. Summary judgment is usually not appropriate for claims based on subjective facts such as motive, intent, good faith, knowledge and malice. Phipps v. Schupp, 2009-2037 (La.7/6/10), 45 So.3d 593; Johnson v. Pinnergy Ltd., 46,188 (La.App. 2 Cir. 4/13/11), 63 So.3d 302. However, summary judgment may be granted on subjective intent issues when no genuine issue of material facts exists concerning the pertinent intent. Phipps v. Schupp, supra; Johnson v. Pinnergy Ltd., supra.
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Sensebe v. Canal Indem. Co., supra; Tillman v. Eldridge, 44,460 (La.App. 2 Cir. 7/15/09), 17 So.3d 69.

Discussion

By three of its assignments of error, Sterling urges that summary judgment was improper because (1) Sterling established that it held a good faith belief that Ms. Martin was not entitled to receive flextime, thus precluding the award of penalty wages; (2) Sterling’s belief that flextime wages were not due was a subjective issue of good faith that cannot be resolved on motion for summary judgment; and (3) the court made improper credibility determinations on disputed evidence. Sterling shows that penalty wage claims are subject to “equitable defenses” which are not technically defenses but, rather, equitable showings that greater justice would result from denying penalty wages. Otwell v. Howard Lumber & Supply Co., 283 So.2d 826 (La.App. 2 Cir.), writ denied, 286 So.2d 364 (1973). It argues |3that Simmons honestly (if wrongly) believed he could withhold payment of flextime for the *417 reasons rejected by the district court; nonetheless, these were good-faith beliefs that should preclude the penalty. Carri-ere v. Pee Wee’s Equip. Co., supra. Specifically, Sterling contends that penalty wages have been denied when the claimant’s conduct caused the employer to incur additional expenses, when questions arose as to how many hours the claimant worked, or when the employer believed the claimant had retained company property. See, e.g., Powell v. Flotation Services Inc., 413 So.2d 276 (La.App. 8 Cir.), writ denied, 415 So.2d 941 (1982). It adds that Ms. Martin owed a fiduciary duty not to divulge Sterling’s sensitive information to competitors, even in the absence of a non-competition agreement. Cenla Physical Therapy v. Lavergne, 94-1538 (La.App. 3 Cir. 5/3/95), 657 So.2d 175. Sterling argues that the court, in effect, required irrefutable proof to support its good-faith beliefs, a standard rejected in Carriere v. Pee Wee’s Equip., supra. Finally, it urges the court made improper credibility calls between competing affidavits: Simmons’s affidavit asserted his good faith, while Gann’s and Ms. Martin’s denied it. Sterling concludes that this court should reverse the summary judgment in favor of Ms. Martin and render summary judgment in favor of Sterling, dismissing the penalty wage claim.
Ms. Martin responds that the wages were owed, demanded but not paid, creating liability under R.S. 23:632. Hattaway v. Health Paradigm, supra. She argues that the district court properly analyzed and rejected each alleged defense, and suggests there were many ways Sterling could have created a genuine issue, as by producing the audit showing narcotics | mdisappeared while she was on duty, a report to the DEA, or a complaint to the Pharmacy Board, but none was offered. She also argues that under Phipps v. Schupp, supra, there was no genuine issue of material fact as to Sterling’s bad faith: Sterling’s failure to pay was based not on evidence but on groundless objections and rank speculation, which falls far short of the factual support required to defeat a well-supported motion for summary judgment. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002. Finally, she contends that cases like Carriere and Cenia Physical Therapy, which denied penalty wages, are inapposite in that those employers offered competent evidence of their good faith, a showing utterly absent here. She urges affirmance.
On close examination, we are constrained to agree with Sterling that the issue of bad faith, upon which the equitable defenses to R.S. 23:632 are based, requires a finding of intent which is not suitable for summary judgment disposition on this record. For example, Sterling urges that some narcotics disappeared while Ms. Martin was on duty, and given her history of stealing narcotics from a prior employer, Simmons reasonably suspected Ms. Martin of taking them; Ms. Martin and Mr. Gann, however, stated that she was never under suspicion. A reasonable belief that the employee stole or damaged company property may be a defense to R.S. 23:632 even if the employee is ultimately cleared of the accusation. Glover v. Diving Servs. Int’l, 577 So.2d 1103 (La.App. 1 Cir.1991); Colbert v. Mike-Baker Brick Co., 326 So.2d 900 (La.App. 3 Cir.), writ not cons., 57 Ala.App. 519, 329 So.2d 573 (1976). Whether Simmons’s beliefs were reasonable obviously requires a credibility | ncall and resolution of genuine factual issues. Sterling also urges that Ms. Martin breached a fiduciary duty to Sterling, for which it could withhold her wages. Employees under certain circumstances owe fiduciary duties to their employers. Cenla Physical Therapy v. Lavergne, supra, and citations therein. An at- *418 will employee’s sudden resignation is not in itself a breach of fiduciary duty, Harrison v. CD Consulting Inc., 2005-1087 (La.App. 1 Cir. 5/5/06), 934 So.2d 166, but Simmons’s reasonable belief that Ms. Martin breached other fiduciary duties by misappropriating Sterling’s intellectual property or client lists could be a defense to R.S. 23:632. For these reasons, we find that summary judgment was not appropriate. The judgment will be reversed and the case remanded for further proceedings.
We would observe, however, that if at trial on the merits Sterling offers no more evidence than it has adduced in opposition to the motion for summary judgment, reasonable inferences and factual findings would fully support the district court’s result. First, there is absolutely no merit to Sterling’s position that Ms. Martin’s abrupt departure and insufficient notice provided reasonable grounds to withhold some of her pay. In at-will employment, the employee may quit at any time without liability to her employer. La. C.C. art. 2747; LeDay v. State, supra; Clark v. Acco Systems, supra. Any notion to the contrary is per se unreasonable.[3] Second, aside from Ms. Martin’s history of misappropriating drugs from a prior employer, Sterling has offered nothing to support its suspicion that she stole drugs 112from Sterling, and absolutely nothing to support a suspicion that she stole sensitive company information. The instant showing, at a trial on the merits, could not possibly support a finding of a good faith dispute. Finally, Sterling’s failure to respond to Ms. Martin’s initial demand, on the pretext that Simmons’s secretary signed for it, reeks of bad faith and is precisely the type of disregard that R.S. 23:632 is intended to penalize. A much stronger showing of trial evidence by Sterling will be needed to defeat Ms. Martin’s claim of penalty wages, but in the narrow context of a summary judgment we are constrained to reverse and remand.
Because of this resolution, we pretermit any consideration of Sterling’s third assignment of error, which asserts that the court miscalculated the penalty wage.

Conclusion

For the reasons expressed, the summary judgment is reversed and the case is remanded to the district court for further proceedings. Costs are to be assessed by the district court at the conclusion of trial.
REVERSED AND REMANDED.

. Sterling Associates, a corporation, is the "managing member” of Sterling Pharmacy, the limited liability company that actually operates the pharmacy. The corporation initially contended that it had no employment relationship with Ms. Martin, but both entities are aligned for purposes of this appeal.

. The earlier pay stubs referred to her as Amy Wallace, presumably her maiden name or a prior married name.

. To the extent that Powell v. Flotation Services, supra, suggests otherwise, we feel that opinion is in error and would not follow it. Notably, Powell never cites or discusses Art. 2747 or at-will employment, and seems to contradict the prevailing law in this area.